UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TAMARA EWING, KOSMOE MALCOM, and KWANZA GARDNER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO.: |
| GEICO INDEMNITY COMPANY, GOVERNMENT EMPLOYEES INSURANCE COMPANY, and GEICO GENERAL INSURANCE COMPANY, Maryland corporations, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs, Tamara Ewing ("Ewing"), Kosmoe Malcom ("Malcom"), and Kwanza Gardner ("Gardner") (collectively "Plaintiffs"), on behalf of themselves and all other similarly situated, file this class action complaint against GEICO Indemnity Company ("GEICO Indemnity"), Government Employees Insurance Company ("Government Employees), and GEICO General Insurance Company ("GEICO General") (collectively "GEICO" or "Defendants"), and in support thereof state the following:

1

## NATURE OF THE CASE

1.     This is a Georgia class action lawsuit by Plaintiffs, individually, and on behalf of a putative class of persons, who were insureds under GEICO private passenger auto ("PPA") insurance policies, who submitted covered first-party total loss auto claims, and who were not paid the full taxes and fees due under the policies.

2.     The GEICO PPA insurance policies (the "Policies") insuring Plaintiffs and all putative class members ("Class Members") have identical material language relating to coverage provided for first-party total loss claims.   The materially identical language covering Plaintiff and each Class Member is in the "form" policy attached hereto as Exhibit A.

3.     The Policies require payment on total losses of "actual cash value," which is defined by the Policies as "the replacement cost of the auto or property less depreciation or betterment." *See* Exhibit A at 8 (Policy Form) (original emphasis omitted).  Plaintiffs bring claims for breach of contract and declaratory relief because GEICO failed to pay Plaintiffs and Class Members the mandatory replacement costs on their total loss claims.

4.     Georgia law expressly requires insurers to pay applicable taxes and fees in the replacement of total loss vehicles. Ga. Comp. R. & Regs. R. 120-2-52-.06, Total Loss Vehicle Claims (insurer shall include in total loss coverage payments "all

applicable taxes, license fees and other fees incident to the transfer of ownership of a comparable automobile").

5.      These mandatory replacement costs due upon the replacement of any total loss vehicle, and therefore due under the Policies, include the Georgia title ad valorem tax ("TAVT") (which replaced Georgia's mandatory auto sales tax in 2013), a minimum title transfer fee of $18.00, and a minimum license plate transfer fee of $5.00.

6.      GEICO breached the Policies and Georgia law by failing to pay the mandatory replacement costs of TAVT, title transfer fees, and/or license plate transfer fees on first-party covered total loss claims.

## THE PARTIES

7.      Plaintiff Ewing is and was domiciled in Fulton County, Georgia, and was a Georgia citizen at all times relevant to this lawsuit.

8.      Plaintiff Malcom is and was domiciled in Rockdale County, Georgia, and was a Georgia citizen at all times relevant to this lawsuit.

9.      Plaintiff Gardner is and was domiciled in Chatham County, Georgia, and was a Georgia citizen at all times relevant to this lawsuit.

10.      GEICO Indemnity at all relevant times is and was a foreign corporation located in, incorporated in, and with its principal place of business in Maryland. GEICO Indemnity transacts business in Georgia and has its total loss salvage

department, total loss claims handling, and maintains much of the documents and data relevant to this case in this district and division.

11.    Government Employees at all relevant times is and was a foreign corporation located in, incorporated in, and with its principal place of business in Maryland. Government Employees transacts business in Georgia and has its total loss salvage department, total loss claims handling, and maintains much of the documents and data relevant to this case in this district and division.

12.    GEICO General at all relevant times is and was a foreign corporation located in, incorporated in, and with its principal place of business in Maryland. GEICO General transacts business in Georgia and has its total loss salvage department, total loss claims handling, and maintains much of the documents and data relevant to this case in this district and division.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiffs are members of the putative class, which consists of at least 100 members; (b) Plaintiffs are Georgia citizens; (c) Defendants are Maryland citizens; and (d) the amount in controversy exceeds the sum of $5 million exclusive of interest and costs.  This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over claims for expenses of litigation made pursuant to O.C.G.A. § 13-6-11.

14.     Venue is proper in this Court because Defendants are subject to personal jurisdiction in this district and division, and a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and division.

## STATEMENT OF FACTS

15.     GEICO's Policies covered each Plaintiff and Class Member based on standardized policy language with identical material terms for collision and comprehensive coverage on first-party total loss physical damage claims.  These terms are set forth in the "form" policy attached hereto as Exhibit A.

## I.     GEICO Indemnity Breached Its Policy with Plaintiff Ewing By Failing to Pay Replacement Costs on Her Total Loss Claim.

16.     Plaintiff Ewing entered a Georgia PPA policy agreement to be insured by GEICO Indemnity under terms contained in the "form" policy attached as Exhibit A.

17.     The Policy provided physical damage coverage for Plaintiff Ewing's 2013 Cadillac ATS Luxury RWD, VIN 1G6AB5R36D0143777 ("Ewing Vehicle").

18.     On or about May 1, 2017, Plaintiff Ewing was involved in an auto collision while operating the Ewing Vehicle. Plaintiff Ewing filed a claim with GEICO Indemnity for the Ewing Vehicle's physical damage caused by the collision, claim number 047911412-0101-101.

19.    GEICO Indemnity determined that the Ewing Vehicle was a total loss and that the claim was a covered claim.

20.    GEICO Indemnity, through its vehicle valuation provider CCC Information Services, Inc., determined the Ewing Vehicle had a base value of $17,841.00. *See* Exhibit B at 2 (Ewing Market Valuation Report).

21.    GEICO Indemnity subtracted the deductible of $2,500.00 and added $18.00 for state and regulatory fees but did not include any amount for license plate transfer fees or TAVT. GEICO Indemnity made a final payment of $15,359.00 to Plaintiff Ewing. *See* Exhibit C (Ewing Settlement Explanation).

22.    The TAVT owed on Plaintiff Ewing's claim was $1,248.87 because the applicable TAVT was 7% and the value of the Ewing Vehicle at the time of the loss was $17,841.00. The license plate transfer fee owed on Plaintiff Ewing's claim was $5.00 because Georgia mandates a minimum license plate transfer fee of $5.00.

23.    GEICO Indemnity breached the Policy by failing to pay the mandatory replacement costs including the TAVT and license plate transfer fee, which were reasonably likely to be incurred on the replacement of the total loss vehicle.

24.    Plaintiff Ewing was damaged by GEICO Indemnity's breach.

## II.     Government Employees Breached Its Policy with Plaintiff Malcom By Failing to Pay Replacement Costs on His Total Loss Claim.

25.     Plaintiff Malcom entered a Georgia PPA policy agreement to be insured by Government Employees under terms contained in the policy form attached as Exhibit A.

26.     The Policy provided physical damage coverage for Plaintiff Malcom's 2015 Nissan Versa S Automatic, VIN 3N1CN7AP3FL806335 ("Malcom Vehicle").

27.     On or about March 19, 2019, Plaintiff Malcom was involved in an auto collision while operating the Malcom Vehicle. Plaintiff Malcom filed a claim with Government Employees for the Malcom Vehicle's physical damage caused by the collision, claim number 0109940530101275-01.

28.     Government Employees determined that the Malcom Vehicle was a total loss and that the claim was a covered claim.

29.     Government Employees, through its vehicle valuation provider CCC Information Services, Inc., determined the Malcom Vehicle had an adjusted base value of $5,525.00, and made a "pre-loss deduction" of $433.00, for a vehicle value of $5,092.00. *See* Exhibit D (Total Loss Settlement Explanation).

30.     Government Employees subtracted the deductible of $500.00 and added $385.00 for TAVT and $18.00 for a title transfer fee but did not include any amount license plate transfer fees. Government Employees made a final payment of $4,995.00 to Plaintiff Malcom. *See Id.*

31.    The license plate transfer fee owed on Malcolm's claim was $5.00 because Georgia mandates a minimum license plate transfer fee of $5.00.

32.    Government Employees breached the Policy by failing to pay all mandatory replacement costs including the license plate transfer fee, which were reasonably likely to be incurred on the replacement of the total loss vehicle.

33.    Plaintiff Malcom was injured by Government Employees' breach.

### III.    GEICO General Breached Its Policy with Plaintiff Gardner By Failing to Pay Replacement Costs on His Total Loss Claim.

34.    Plaintiff Gardner entered a Georgia PPA policy agreement to be insured by GEICO General under terms contained in the policy form attached as Exhibit A.

35.    The Policy provided physical damage coverage for Plaintiff Gardner's 2011 Chevy Cruze LS, VIN 1G1PD5SH5B7207585 ("Gardner Vehicle").

36.    On or about November 20, 2018, Plaintiff Gardner was involved in an auto collision while operating the Gardner Vehicle. Plaintiff Gardner filed a claim with GEICO General for the Gardner Vehicle's physical damage caused by the collision, claim number 058958558-0101-037.

37.    GEICO General determined that the Gardner Vehicle was a total loss and that the claim was a covered claim.

38.    GEICO General, through its vehicle valuation provider CCC Information Services, Inc., determined the Gardner Vehicle had an adjusted base value of $4,861.00. *See* Exhibit E at 2 (Gardner Market Valuation Report).

39.     GEICO General subtracted the deductible of $500.00, added $340.27 for TAVT, and added $18.00 for state and regulatory fees but did not include any amount for license plate transfer fees. GEICO General made a final payment of $4,719.27 to Plaintiff Gardner. *See* Exhibit F (Gardner Settlement Explanation).

40.     The license plate transfer fee owed on Plaintiff Gardner's claim was $5.00 because Georgia mandates a minimum license plate transfer fee of $5.00.

41.     GEICO General breached the Policy by failing to pay all mandatory replacement costs including the license plate transfer fee, which were reasonably likely to be incurred on the replacement of the total loss vehicle.

42.     Plaintiff Gardner was injured by GEICO General's breach.

43.     All Plaintiffs satisfied all terms of the Policies and all conditions precedent, such that their insurance policies were in effect and operational at the time of the accident, and such that their total loss claims were deemed covered claims by GEICO.

## IV.     GEICO Breached Its Policies with All Class Members by Failing to Pay The Mandatory Replacement Costs On Their Total Loss Claims.

44.     Each Class Member was insured by GEICO for total losses under the same material terms as the Policies insuring Plaintiffs.

45.     Like Plaintiffs, each Class Member submitted a claim to GEICO during the class period, which GEICO determined was a covered total loss.

46.     GEICO breached its insurance policy with each Class Member by

failing to pay all mandatory replacements costs on the Class Member's total loss claim.

47.     All Class Members satisfied all terms of the Policies and all conditions precedent, such that their insurance policies were in effect and operational at the time of the accident, and their total loss claims were deemed covered claims by GEICO.

## V.     The Policies Required GEICO To Pay Actual Cash Value, Including Mandatory Replacement Costs TAVT, Title Transfer Fees, And License Plate Transfer Fees on All Total Loss Claims.

48.     The Policies required GEICO to pay "actual cash value" ("ACV") on first-party total loss claims.

49.     The Policies define ACV as "the replacement cost of the auto or property less depreciation or betterment." *See* Exhibit A at 8.

50.     The Policies do not exclude from coverage the mandatory TAVT, title transfer fees, and/or license plate transfer fees.

51.     The Policies provide as follows relating to PPA physical damage collision coverage:

> We will pay for ***collision loss*** to the ***owned*** or ***non-owned auto*** for the amount of each ***loss*** less the applicable deductible.

*Id.* at 9. (emphasis in original).

52.    The Policies provide as follows relating to PPA physical damage comprehensive coverage:

> We will pay for each **loss** less the applicable deductible caused other than by **collision** to the **owned** or **non-owned auto**.

*Id.* (emphasis in original).

53.    In the same section, under a provision entitled "LIMIT OF LIABILITY," the Policies state, in pertinent part:

> The limit of our liability for loss:
>
> 1. Is the **actual cash value** of the property at the time of the **loss**;
>
> …
>
> **Actual cash value** of property will be determined at  the time of the **loss** and will include an adjustment for **depreciation/betterment** and for the physical condition of the property.

*Id.* at 10. (emphasis original).

54.    The Policies incorporate the mandates of Georgia law:

> TERMS OF POLICY CONFORMED TO STATUTES
>
> Any terms of this policy in conflict with the statutes of Georgia are amended to conform to those statutes.

*Id.* at 17.

55.    The Policies impose no condition that an insured replace a total loss vehicle in order to receive full coverage under the Policies.

11

56.    The Policies contain no provision setting out a difference in coverage based on whether a total loss vehicle is leased, owned, or financed.

57.    The Policies contain no provision setting out a difference in coverage based on whether a total loss vehicle is actually replaced after the total loss.

## VI.    Georgia Law Required GEICO to Pay TAVT, Title Transfer Fees, and License Plate Transfer Fees Under the Policies.

58.    Georgia State Rules and Regulations, Rule 120-2-52-.06, Total Loss Vehicle Claims, is promulgated by the Georgia Commissioner of Insurance pursuant to the authority set forth in O.C.G.A. §§ 33-2-9 and 33-34-8.  Rule 120-2-52-.06 requires that when insurers pay for total losses in money (rather than actually providing a replacement vehicle), the insurers must include in such payments "all applicable taxes, license fees and other fees incident to the transfer of ownership of a comparable automobile. The amount payable on taxes, license fees, and transfer fees shall be limited to the amount that would have been paid on the totaled, insured vehicle at the time of settlement."

59.    This requirement set out in paragraph 58 is expressly incorporated into the terms of the Policies. Exhibit A at 17 (incorporating all Georgia statutory provisions).

60.    TAVT, title transfer fees, and license plate transfer fees are taxes and fees incident to transfer of ownership and should have been paid by GEICO under the Policies and Georgia law.

## VII.   TAVT, Title Transfer Fees, and License Plate Transfer Fees are Fees Incident to the Transfer of Ownership and Mandated by Georgia Law.

61.     Throughout the class period, Georgia law imposed a mandatory TAVT of between 6.75 and 7.00 percent based on the fair market value of the vehicle on any purchase, transfer, or lease of a private passenger vehicle. O.C.G.A. § 48-5C-1(b)(1)(A).

62.     Throughout the class period, Georgia prohibited the purchase, transfer, or lease of a vehicle without the transfer of title, and the payment of a minimum $18.00 title transfer fee.  O.C.G.A. § 40-3-32(b); O.C.G.A. § 40-3-38(c).

63.     Throughout the class period, Georgia prohibited the purchase, transfer, or lease of a private passenger vehicle without proper registration, and the payment of a minimum $5.00 license plate transfer fee. O.C.G.A. § 40-2-20(a)(1)(A); O.C.G.A. § 40-2-42(b).

## VIII.   Plaintiffs and Class Members Pray for Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11.

64.     The Policies and Georgia law clearly require that GEICO pay TAVT, title transfer fees, and license plate transfer fees on first-party total loss claims.

65.     GEICO has acted in bad faith, has been stubbornly litigious, and has caused Plaintiffs and Class Members unnecessary trouble and expense by GEICO's failure to comply with the clear requirements of the Policies and Georgia law.

66. There is no legal justification for GEICO's conduct in failing to pay TAVT, title transfer fees, and license plate fees on Georgia first-party total loss claims.

67. Plaintiffs and Class Members are entitled to expenses of litigation, including all attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.

## CLASS ACTION ALLEGATIONS

68. Plaintiffs bring this lawsuit as a class action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

69. Plaintiffs assert claims for breach of contract on behalf of a class (hereafter the "Class") defined as follows:

> All insureds, under any Georgia policy issued by GEICO with the same material policy language covering a private passenger auto for physical damage who submitted a covered first-party physical damage claim, whose claim was adjusted as a total loss, and who received a total loss payment from GEICO that did not include TAVT, title transfer fees, and/or license plate transfer fees, during the time period six years before the filing of this lawsuit through the date of a class certification order.

70. Excluded from the Class are all officers and employees of GEICO and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

14

**Fed. R. Civ. P. 23(a).**

71.    **Numerosity.** Class members are believed to exceed 10,000 for each GEICO Defendant and are so numerous and geographically dispersed throughout Georgia that separate joinder of each is impracticable.

72.    **Ascertainability.** The Class Members are ascertainable and readily identifiable from GEICO's information and data.

73.    **Commonality.** Common questions of law and fact predominate, which are susceptible to common answers:

    a.   Whether the Policies require GEICO to pay TAVT on first-party total loss claims;

    b.   Whether the Policies require GEICO to pay title transfer fees on first-party total loss claims;

    c.   Whether the Policies require GEICO to pay license plate transfer fees on first-party total loss claims; and

    d.   Whether GEICO breached the Policies by failing to pay TAVT, title transfer fees, and/or license plate transfer fees without precondition.

74.    **Typicality.** Plaintiffs' claims and defenses are typical of the claims of all Class Members. GEICO injured Plaintiffs and Class Members through uniform misconduct and Plaintiffs' legal claims arise from the same core practices—GEICO's failure to pay full ACV, including TAVT, title transfer fees, and/or license

plate transfer fees, on first-party total loss claims under PPA Georgia physical damage policies with the same material total loss coverage provisions. Plaintiffs suffered the same harm as all Class Members: damages for unpaid TAVT, title transfer fees, and license plate transfer fees under the Policies.

75.   **Adequacy.** Plaintiffs are adequate class representatives because their interests do not conflict with Class Members' interests, and they will fairly and adequately protect these interests. Plaintiffs' counsel are experienced in litigating consumer class actions and complex litigation. Plaintiffs' counsel have specific experience successfully litigating similar disputes as class counsel.

## Fed. R. Civ. P. 23(b)(2).

76.   Plaintiffs' claims are maintainable on behalf of the Class pursuant to Fed. R. Civ. P. 23(b)(2).

77.   GEICO acted and refused to act on grounds that apply generally to all Class Members, thereby making final injunctive relief appropriate with respect to the Class as a whole. GEICO created and implemented a uniform claims handling practice based on uniform policy language that is applicable to all Class Members. The Policies require GEICO to pay the full ACV, including the TAVT, a minimum title transfer fee of $18.00, and a minimum license plate transfer fee of $5.00 due on the replacement of all total loss vehicles. The failure of GEICO to pay these amounts in breach of the Policies applies generally to all Class Members and is ongoing,

likely to be repeated.  GEICO's breach of the Policies applies generally to the Class, so that declaratory relief is appropriate respecting the Class as a whole.

### Fed. R. Civ. P. 23(b)(3).

78.    Plaintiffs' claims are maintainable on behalf of the Class pursuant to Fed. R. Civ. P. 3(b)(3).

79.    Questions of law and fact, including the common questions identified above, predominate over any questions only affecting individual Class Members.

80.    A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. Class Members' individual damages, while meaningful, are too small to prosecute individually. Given the relatively small damages individually suffered, individual Class Members appear to have little interest in controlling the prosecution of this matter in separate actions.  Thousands of individual lawsuits seeking relatively small recoveries based on the same legal theories would burden the court system. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.  Plaintiffs' counsel are unaware of likely difficulties in managing this class action.

81.    It is desirable to concentrate the litigation of these claims in this forum because the class action involves Georgia claims under Georgia law, the great majority of Class Members reside in Georgia, many Class Members reside in this

district and division, and substantial evidence relating to this class action is located in this district and division.

82.    Plaintiffs are unaware of other pending litigation on behalf of Class Members involving these Georgia claims against GEICO.

**COUNT I**
**BREACH OF CONTRACT**

83.    The allegations in Paragraphs 1 through 82 are hereby incorporated by reference.

84.    Plaintiffs and all Class Members were covered insureds under Policies with GEICO and complied with all Policy terms relating to their total loss claims.

85.    Each Plaintiff and Class Member made a claim under their Policy that GEICO determined to be a first-party total loss covered claim.

86.    The Policies and Georgia law required that GEICO pay Plaintiffs and all Class Members mandatory replacement costs which were reasonably likely to be incurred on the replacement of their total loss vehicles.  Such costs include full TAVT, title transfer fees, and license plate transfer fees on total losses because such taxes and fees are mandatory replacement costs for total loss insured vehicles.

87.    GEICO failed to pay Plaintiffs and all Class Members all of TAVT, title transfer fees, and/or license plate transfer fees under the Policies on their first-party total loss claims.

88.     GEICO's failure to provide coverage, and to pay Plaintiffs and Class Members TAVT, title transfer fees, and/or license plate transfer fees breached GEICO's Policies.

89.     As a result of GEICO's breaches, Plaintiffs and Class Members have suffered damages and are entitled, under their Policies, to sums representing all unpaid TAVT, title transfer fees, and license plate transfer fees, as well as prejudgment and post judgment interest, attorneys' fees, and all costs and expenses of litigation.

90.     Plaintiffs and the Class Members are entitled to an award of attorneys' fees and costs under Georgia law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

## COUNT II
## DECLARATORY JUDGMENT (28 U.S.C. § 2201)

91.     The allegations in Paragraphs 1 through 90 are hereby incorporated by reference.

92.     Plaintiffs and all Class Members were covered insureds under Policies with GEICO and complied with all Policy terms relating to their total loss claims.

93.     Each Plaintiff and Class Member made a claim under their Policy that GEICO determined to be a first-party total loss covered claim.

94.     The Policies and Georgia law required that GEICO pay Plaintiffs and all Class Members full TAVT, title transfer fees, and license plate transfer fees on

their total losses because such taxes and fees are mandatory replacement costs for total loss insured vehicles.

95.    GEICO failed to pay Plaintiffs and all Class Members all of TAVT, title transfer fees, and/or license plate transfer fees under the Policies on their first-party total loss claims.

96.    GEICO's failure to provide coverage, and to pay Plaintiffs and Class Members TAVT, title transfer fees, and/or license plate transfer fees breached GEICO's Policies.

97.    As a result of GEICO's breaches, Plaintiffs and Class Members have suffered damages and are entitled, under their Policies, to sums representing all unpaid TAVT, title transfer fees, and license plate transfer fees, as well as prejudgment and post judgment interest, attorneys' fees, and all costs and expenses of litigation.

98.    Plaintiffs' and Class Members' injuries are likely to be redressed by favorable disposition of this lawsuit. Plaintiffs and Class Members have suffered actual injury resulting from GEICO's conduct resulting from GEICO's failure to pay.

99.    There is a substantial, continuing controversy between Plaintiffs and Class Members, and GEICO.  The injuries and damages suffered by Plaintiffs and

Class Members are real and there is a reasonable expectation that the injuries will continue and be repeated.

100.   The Court should declare that the GEICO Georgia PPA Policies required and continue to require GEICO to pay full ACV, including TAVT, title transfer fees, and license plate transfer fees on first-party total loss claims.

**COUNT III**
**EXPENSES OF LITIGATION (O.C.G.A. § 13-6-11)**

101.   The allegations in Paragraphs 1 through 100 are hereby incorporated by reference.

102.   GEICO has acted in bad faith, been stubbornly litigious, and caused Plaintiffs and Class Members unnecessary trouble and expense by the failure to comply with the clear requirements of the Policies and Georgia law.

103.   There is no legal justification for GEICO's conduct in failing to pay TAVT, title transfer fees, and license plate fees on Georgia first-party total loss claims.

104.   Plaintiffs and Class Members are entitled to, and expressly pray for, expenses of litigation, including all attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, demand a trial by jury on all triable issues and seek judgment as follows:

a) For an order certifying this action as a class action on behalf of the Class, with Plaintiffs as class representatives;

b) For an award of compensatory damages in amounts owed under the Policies and Georgia law;

c) For all other damages according to proof;

d) For a declaratory judgment that the GEICO Georgia PPA Policies required and continue to require GEICO to pay full ACV, including TAVT, title transfer fees, and license plate transfer fees on first-party total loss claims;

e) For an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11 and other applicable law;

f) For costs of suit incurred herein;

g) For prejudgment and post judgment interests on any amounts awarded; and

h) For such other relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues so triable.

This 29th day of April 2020,


/s/ Christopher B. Hall
Christopher B. Hall
Georgia Bar No. 318380
Lead Counsel
Andrew Lampros
Georgia Bar No. 432328
HALL & LAMPROS, LLP
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Telephone: (404) 876-8100
chall@hallandlampros.com
alampros@hallandlampros.com

W. Thomas Lacy
Georgia Bar No. 431032
LINDSEY & LACY, PC
200 Westpark Drive, Suite 280
Peachtree City, GA 30269
Telephone: 770-486-8445
tlacy@llptc.com

Bradley W. Pratt
Georgia Bar No. 586673
PRATT CLAY LLC
4401 Northside Parkway
Suite 520
Atlanta, GA 30327
Telephone: (404) 949-8118
bradley@prattclay.com

Scott Edelsberg, Esq. (pro hac vice to be filed)
David M. Sholl, Esq. (pro hac vice to be filed)
EDELSBERG LAW, PA
20900 NE 30th Ave., Suite 417

Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com
david@edelsberglaw.com

Andrew J. Shamis (pro hac vice to be filed)
SHAMIS & GENTILE, P.A.
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone: (305) 479-2299
Facsimile (786) 623-0915
efilings@shamisgentile.com

Rachel Dapeer (pro hac vice to be filed)
DAPEER LAW, P.A.
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223
rachel@dapeer.com

Edmund A. Normand (pro hac vice to be filed)
Jacob L. Phillips (pro hac vice to be filed)
NORMAND PLLC
Post Office Box 1400036
Orlando, FL 32814-0036
Telephone: (407) 603-6031
ed@ednormand.com
jacob.phillips@normandpllc.com

Attorneys for Plaintiffs