IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TAMARA EWING, *et al.*, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 5:20-CV-165 (MTT) |
| ) | |
| GEICO INDEMNITY COMPANY, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiffs Tamara Ewing, Kosmoe Malcom, Kwanza Gardner,[1] Aqueelah Coleman, and Tondra Washington filed this lawsuit on behalf on themselves and all others similarly situated. Doc. 42. The plaintiffs have moved pursuant to Rule 23 of the Federal Rules of Civil Procedure to certify the class. Docs. 51; 76; 84. At a hearing on the motion, the Court asked plaintiffs' counsel to submit a new proposed definition of the class to address one of the defendants' objections, and the parties filed supplemental briefs addressing the new proposed class definition. Docs. 76; 77; 79. Then in response to supplemental authority filed by the defendants, the plaintiffs again submitted a new proposed class definition. Doc. 84. The parties again filed supplemental briefs. Docs. 87; 88. For the reasons stated below, the plaintiffs' consolidated motion (Doc. 51; 76; 84) is **GRANTED**.[2]

---

[1] As discussed in this order, Kwanza Gardner wishes to be dismissed from this action. The defendants shall within seven days state whether they oppose her dismissal.

[2] The parties have elected to defer motions on the merits of the parties' claims and defenses until after the Court rules on the plaintiffs' motion for class certification. Doc. 59 at 1. Sometimes merits issues

**I. BACKGROUND**

Each of the plaintiffs and potential class members was insured by either GEICO Indemnity Company, Government Employees Insurance Company, or GEICO General Insurance Company (referred to collectively as "GEICO") under identical policies. Doc. 42 ¶ 2. The policy required "payment on total losses of 'actual cash value.'" *Id*. ¶ 3; *see* 51-1 at 9, 11. Actual cash value is defined in the policy as "the replacement cost of the auto or property less depreciation or betterment." Docs. 42 ¶ 3; 51-1 at 9. In other words, if an insured's vehicle was deemed a total loss, the insured was entitled to payment of the entire replacement cost of the vehicle. The value of a vehicle is of course the principal element of replacement cost, but there are others. The plaintiffs contend that one of those elements—title ad valorem tax ("TAVT")—was underpaid.[3] Docs. 42 ¶ 3; 51 at 2-3. TAVT is the tax a purchaser pays when buying a vehicle. Thus, the replacement cost of an insured vehicle includes TAVT.

GEICO agrees that TAVT is an element of replacement cost, but because it used a different methodology to calculate TAVT than the methodology the plaintiffs claim Georgia law requires, GEICO allegedly underpaid some insureds. From 2013 to 2019, Georgia law required TAVT for used vehicle purchases to be based on a percentage of the vehicle's fair market value, which was defined as "the average of the current fair market value and the current wholesale value of a motor vehicle listed in the current motor vehicle ad valorem assessment manual utilized by the state revenue

---

must be addressed before a class can be certified. The parties believe that is not the case here. The Court agrees. It is possible, as discussed in this order, that the determination of some merits issues will affect some class members. If necessary, the Court will amend the class definition pursuant to Rule 23(c)(1)(C).

[3] The plaintiffs previously alleged they were also underpaid replacement cost because GEICO failed to pay the cost of a license plate transfer fee. Doc. 51 at 3. The plaintiffs dropped this theory of recovery in their most recent proposed class definition, opting to focus on the TAVT issue instead.

commissioner." 2012 Ga. Laws 257, §§ 1-4. Thus, the plaintiffs contend, the motor vehicle ad valorem assessment manual used by the state revenue commissioner ("DOR Manual") established TAVT for a vehicle.[4] But GEICO used its own "market valuation report" to calculate TAVT. Doc. 51 at 1-3. When GEICO's methodology yielded a valuation lower than the DOR Manual's valuation, GEICO's insureds received a lower TAVT payment.

Both parties' experts analyzed a 1,100-claim sample of the class and were able to identify the claims for which GEICO underpaid TAVT under the plaintiffs' theory. Docs. 51-9; 54-6 ¶ 25. For example, the plaintiffs' expert calculated that of the 1,100 sample claims, 448 were underpaid TAVT. Doc. 51-9 at 11-36. Although GEICO's expert found a few mistakes in the plaintiffs' expert's calculations, she concluded that 441 claims of the 1,100 were underpaid TAVT. Doc. 54-6 ¶ 25. Moreover, the experts were able to determine the exact amount overpaid or underpaid for any given TAVT payment. Docs. 51-9; 54-6 ¶ 25.

## II. STANDARD

Fed. R. Civ. P. 23 governs the certification and management of class actions in federal courts. To maintain a class action, Rule 23(a) requires the putative class to satisfy four prerequisites, and the class action may proceed only if it is one of the three types identified in Rule 23(b). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (citation omitted). A plaintiff must also establish the implied requirement

---

[4] Since January 1, 2020, TAVT has not been calculated based on the DOR Manual but rather on "the retail selling price of the motor vehicle, less any reduction for the trade-in value of another motor vehicle." O.C.G.A. § 48-5C-1(a)(1)(A). This is why the plaintiffs' proposed class does not include claims for losses occurring after December 31, 2019.

that the proposed class is "adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)).  The burden of establishing the propriety of class certification lies with the moving party.  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003)).  The moving party "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The Court must conduct a "rigorous analysis" to ensure Rule 23's prerequisites are satisfied prior to certifying a class.  *Vega*, 564 F.3d at 1266 (citations omitted). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."  *Id*. (internal quotation marks and citations omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

Specifically, Rule 23(a) requires a plaintiff to show:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "These four prerequisites of Rule 23(a) are commonly referred to as 'numerosity, commonality, typicality, and adequacy of representation, and they are designed to limit class claims to those fairly encompassed by the named plaintiffs'

individual claims.'"  *Valley Drug*, 350 F.3d at 1188 (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000)).

The plaintiffs are pursuing certification under Rule 23(b)(3), which permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Although the calculation of damages often requires individual proof, this usually does not defeat class certification unless damages questions are joined by individual questions of liability or if computing damages would "be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable."  *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1240 (11th Cir. 2016).

### III. DISCUSSION

The plaintiffs seek classification of the following class:

> All insureds under a Georgia policy issued by GEICO covering a private passenger auto for physical damage who submitted a physical damage claim on a loss occurring during the period six years before the filing of this lawsuit through December 31, 2019, determined by GEICO to be a covered total loss claim, whose total loss vehicles were listed in the motor vehicle ad valorem assessment manual in effect at the time of loss, and whose claim's total loss payment did not include title ad valorem tax greater than the title ad valorem tax due based on the fair market value identified by the motor vehicle ad valorem assessment manual.

Doc. 84 at 3.

**A. Numerosity**

The first requirement for class certification under Rule 23(a) is that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

The plaintiffs state that this class would number in tens of thousands, and GEICO does not contend otherwise.  Doc. 51 at 12.  Accordingly, the plaintiffs have satisfied the numerosity requirement.

**B. Commonality and Predominance**

Rule 23(a)(2) requires "questions of law or fact common to the class."  Rule 23(b)(3) requires the plaintiffs to establish predominance, meaning that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Although separate issues, the parties' commonality and predominance arguments largely overlap.  Accordingly, the Court addresses both issues here.

To satisfy commonality, the plaintiffs must show the putative class members "have suffered the same injury."  *Wal-Mart Stores*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  However, class certification is not appropriate merely because the plaintiffs allege all members of the class suffered a violation of the same provision of law.  *Id*.  Rather, "[t]heir claims must depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*.  "[F]or purposes of Rule 23(a)(2), even a single common question will do."  *Id.* at 2556 (cleaned up).

"Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'"  *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (alteration in original) (quoting *Klay v. Humana, Inc.*,

382 F.3d 1241, 1255 (11th Cir. 2004)).  "On the other hand, common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'"  *Id*. (quoting *Andrews v. Am. Tel & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996)) (alteration in original).  Predominance is not present and certification is not appropriate if each class member must submit a substantial amount of individualized proof to establish most or all elements of their claims.  *Id*.  Thus, the Court must consider the claims, defenses, relevant facts, and substantive law to determine whether resolution of the classwide issues will further each class member's claims.  *Id*.; *see also Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) ("Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action.") (citation omitted).

  The plaintiffs argue that whether GEICO failed to pay appropriate TAVT is a common issue that predominates over any individual issues.  GEICO's liability for TAVT underpayment turns on whether GEICO breached its policy when it calculated TAVT payments based on its alternative valuation methodology rather than the DOR Manual.  The resolution of that issue requires answering common questions regarding GEICO's policy and Georgia law.  And the determination of this issue "is central to the validity of each" claim.  *See Wal-Mart Stores*, 564 U.S. at 350.

  Generally, that much GEICO does not dispute.  But GEICO argues first that insureds who leased their vehicles should be excluded from the class because TAVT for leased vehicles is not necessarily calculated based on the DOR Manual.  Docs. 57 at 5;

87 at 5.  Rather, before 2018, "the TAVT due from a vehicle lessor was based on vehicle value, defined as the higher of the value shown in the DOR Manual or the agreed value of the vehicle shown in the lease."  Doc. 57 at 5 (citing O.C.G.A. § 48-5C-1(a)(1)(E).  And since 2018, "a vehicle lessor must pay TAVT based either on vehicle value or on the total of the base payments due under the lease agreement."  *Id*.

The plaintiffs respond that GEICO's policy did not differentiate between owned and leased vehicles in its definition of "owned vehicles."  Doc. 51-1 at 9 (Owned auto means "[a]ny vehicle described in this policy for which a specific premium charge indicated there is coverage.").[5]  Thus, whatever may happen when someone actually leases a vehicle, the policy requirement to pay replacement cost does not distinguish between leased and owned vehicles.

In practice, GEICO agrees.  GEICO now calculates and pays TAVT for leased vehicles and non-leased vehicles identically.  *Id*. at 53:1-16.

In short, the issue for leased vehicles is simply whether the plaintiffs can establish that TAVT, as an element of replacement cost, for an insured's leased vehicle should have been determined by the DOR Manual.  If GEICO raises the issue in its motion for summary judgment and prevails, the Court will simply amend the class to exclude leased vehicles.[6]

---

[5] The policy's definition of "non-owned autos" also supports the theory that leased vehicles and owned vehicles were treated the same under the policy.  "Non-owned vehicle means a private passenger, utility auto, farm auto or trailer not owned or furnished for the regular use of either you or your relatives … An auto rented or leased for more than 30 days will be considered as furnished for regular use."  Doc. 51-1 at 9.

[6] The plaintiffs' expert has established that there is a reliable method to determine the insureds who drove leased vehicles.  Doc. 51-9 ¶¶ 28-29 ("Of the sample of 1,100, my methodology identified 1,087 non-leases, and 13 leases.  … To check the methodology, we performed a title check of all 1,100 claims.  We found zero leases that had not already been identified.").

Next, GEICO argued, at least initially, that unique affirmative defenses, like accord and satisfaction, the presence of GAP coverage, and setoff, might be available and should defeat predominance. Doc. 57 at 21-22. "The general rule, regularly repeated by courts in many circuits, is that '[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b) simply because affirmative defenses may be available against individual members.'" *Brown*, 817 F.3d at 1240 (quoting 2 Newberg on Class Actions § 4:55 (5th ed.)) (alteration in original). Most of the affirmative defenses cited by GEICO, however, have been addressed by the plaintiffs' revised proposed class definitions.[7] Further, in GEICO's brief opposing the current proposed class definition, it does not address any specific affirmative defenses, and none that could defeat class certification are apparent to the Court. *See* Doc. 87.

Finally, GEICO argues that the purchaser of a used vehicle can challenge the DOR Manual's valuation of the vehicle.[8] Doc. 57 at 13-14. Although GEICO raised this in its commonality argument, it doesn't argue this destroys commonality or raises individual questions. Rather, it argues that for all class members "paying an amount for taxes based on a valuation of less than that included in the DOR Manual does not automatically constitute a breach of contract even assuming Plaintiff's liability theory is correct." *Id*. at 14. Here again, GEICO focuses on what happens, or may happen,

---

[7] For example, the original class definition included insureds who had been overpaid TAVT but had not been paid other elements of replacement cost the plaintiffs were then seeking. GEICO argued it could set off overpayments against underpayments. Because the proposed class now includes only insureds who were underpaid TAVT, setoff and similar defenses are no longer an issue.

[8] Also, some purchasers, *e.g.,* Purple Heart recipients and former prisoners of war, do not have to pay TAVT. Thus, GEICO argues that the plaintiffs' theory—that TAVT must be based on the DOR Manual— fails because there is no commonality between those who are exempt from paying TAVT and those who are not. However, under the plaintiffs' theory, GEICO was required to pay a claim based on the reasonably likely cost to replace the vehicle—not the cost any specific insured might have *actually* incurred when purchasing a vehicle. The situation is somewhat similar to leased vehicles, and just as with leased vehicles, GEICO does not consider whether a particular insured is exempt. Rather, it pays TAVT without regard to exemptions. *See* Doc. 51-4 at 52:6-19.

when a vehicle is bought, not what happens when a vehicle is totaled and GEICO determines the replacement cost of the vehicle. This is a merits issue affecting the entire class, and if GEICO successfully moves for summary judgment on that issue it wins. But that possible merits argument does not destroy commonality or raise individual issues that will predominate over common questions of fact or law.

In sum, the plaintiffs, at this stage, have established that there are common questions that "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

## C. Typicality and Adequacy

Rule 23 requires "the claims and defenses of the representative parties [be] typical of the claims or defenses of the class and … [that] the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(3)-(4). "'A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.'" *Vega*, 564 F.3d at 1275 (quoting *Busby*, 513 F.3d at 1322). Further, the adequacy prerequisite is satisfied if there are no substantial conflicts of interest between the representatives and the class and if the representatives will adequately prosecute the action. *Busby*, 513 F.3d at 1323 (quoting *Valley Drug*, 350 F.3d at 1189).

Before the class was narrowed and the license plate transfer fee claims were dropped, GEICO's main argument, as discussed *supra* note 7, was that a large portion of class members *benefited* from its valuation methodology and thus were overpaid if

the plaintiffs' valuation methodology is correct. Doc. 57 at 3, 13. After redefining the proposed class, however, the class definition only includes insureds who were underpaid TAVT according to the plaintiffs' theory. Accordingly, GEICO's concerns about conflicts within the class have been addressed.

GEICO also previously argued that some of the named plaintiffs were not proper class representatives because they may have received a larger replacement cost payment than what they were owed under the plaintiffs' theory. Specifically, GEICO pointed to Plaintiff Gardner, who "received more for TAVT on all three of her total loss claims than she would have under Plaintiffs' proffered methodology." *Id*. at 16. However, the plaintiffs have indicated that Gardner intends to dismiss her claims and that she will not be a member of the class. Accordingly, GEICO's argument that Gardner is not a typical or adequate class representative is moot, and in any event, Plaintiff Washington can adequately represent class members that were insured by GEICO General, the defendant that insured Gardner.[9] Docs. 42 ¶¶ 62-71; 84 at 3; 88 at 5.

GEICO also argues that because the named plaintiffs are willing to accept GEICO's valuations of their vehicles, their claims "are not typical of, and cannot adequately represent the interests of, those class members who believe that GEICO owes them more for the value of their totaled vehicles." Doc. 57 at 17. GEICO's point is that the only valuation issue in this action is whether GEICO used the DOR Manual to calculate TAVT. Thus, GEICO claims that class members who, unlike the named

---

[9] GEICO also asserts that named plaintiff Tamara Ewing is not a proper representative because GEICO issued Ewing a check for more TAVT than she was owed under the plaintiffs' theory of recovery. Doc. 87 at 5. However, it is disputed whether Ewing accepted this check or whether the check was offered to her before this lawsuit began. *See* Doc. 88 at 5. Thus, denying certification based on this unestablished fact would be inappropriate.

plaintiffs, wish to challenge GEICO's valuation of their vehicles would waive that claim by joining the class. The plaintiffs find speculative GEICO's concern that some insureds may, *years* after their claims were settled, still have viable claims for undervaluation. But even if there are such insureds and even if joining the class would waive such claims, the plaintiffs say this is an issue to be addressed in the class notice. Those insureds can simply opt out of the class. The Court agrees.

### D. Superiority

The following factors are useful for determining whether a class action is a superior method for adjudicating the case:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "The focus of this analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Sacred Heart*, 601 F.3d at 1183-84 (quoting *Klay*, 382 F.3d at 1269). The predominance analysis has a significant impact on the superiority analysis; if common issues predominate over individual issues, then a class action is likely to be a superior vehicle for adjudicating the plaintiffs' claims. *Id.* at 1184 (citation omitted).

GEICO argues that the class definition will require an individualized case-by-case analysis to ascertain whether an individual is included within the class and doing so creates administrative feasibility issues. Doc. 87 at 3-4. However, the Eleventh Circuit has stated that "administrative difficulties—whether in class-member identification or otherwise—do not alone doom a motion for certification. Indeed, we have made clear

that manageability problems will rarely, if ever, be in [themselves] sufficient to prevent certification." *Cherry*, 986 F.3d at 1304.

Determining membership in the class will only require a comparison of TAVT due under the DOR Manual with the TAVT payments GEICO actually paid, which the parties' experts agree can be done.  Other than that simple comparison, there will be no need to engage in individual valuation analyses or damages calculations.  Accordingly, this class is clearly ascertainable, and even if GEICO were correct that this class will not be conveniently determined, that alone would not defeat classification.[10]  *See id*. at 1303-04.

The issues raised in this lawsuit should be resolved in a single forum.  "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts*." Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983); *see also Falcon*, 457 U.S. at 155.  Moreover, GEICO does not dispute the plaintiffs' contention that no class member has filed a lawsuit asserting the same claims asserted in this lawsuit or that concentrating the class members' claims in a single district is desirable.[11]

---

[10] GEICO also mentions (parenthetically) a concern about "fail safe" classes.  "Fail safe" classes are those "that require a court to decide the merits of prospective individual class members' claims to determine class membership."  2 Newberg on Class Actions, § 3:6 (5th ed.).  The plaintiffs have merely defined their class in a way that excludes insureds who were overpaid based on their theory—a modification that resolved several of GEICO's objections.  *See* Docs. 56 at 18-19; 83.  Perhaps that is why GEICO relegated this point to a parenthetical mention.  But membership in the narrowed class does not at all guarantee success on the merits.  The plaintiffs still have to prove their theory is correct.

[11] GEICO argues that the plaintiffs' expert's method of identifying class members is inappropriate because it relies on Department of Revenue excel spreadsheets or the eServices website, both of which are unreliable and inadmissible according to GEICO.  Doc. 77 at 2-3.  GEICO did not file a *Daubert* motion challenging the expert's methodology.  Perhaps that is why GEICO raises a technical objection, arguing the expert relied on uncertified data in his sample analysis.  That may or may not become an issue, and there may be evidentiary objections when the experts analyze the entire class.  But GEICO does not contend its objection should defeat class certification.  Rather, it asks the Court to direct the plaintiffs to "use the TAVT assessment manuals to identify TAVT Subclass members, vehicle values and

Accordingly, the plaintiffs have established that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## IV. CONCLUSION

For the reasons stated above, the plaintiffs' motion for class certification (Docs. 51; 76; 84) is **GRANTED**.  It is further **ORDERED**:

1. The named plaintiffs Tamara Ewing, Kosmoe Malcom. Aqueelah Coleman, and Tondra Washington are designated as class representatives of a Rule 23(b)(3) class defined as follows:

   All insureds under a Georgia policy issued by GEICO covering a private passenger auto for physical damage who submitted a physical damage claim on a loss occurring during the period six years before the filing of this lawsuit through December 31, 2019, determined by GEICO to be a covered total loss claim, whose total loss vehicles were listed in the motor vehicle ad valorem assessment manual in effect at the time of loss, and whose claim's total loss payment did not include title ad valorem tax *equal to or* greater than the title ad valorem tax due based on the fair market value identified by the motor vehicle ad valorem assessment manual.[12]

2. Pursuant to Rule 23(g), Christopher B. Hall, W. Thomas Lacey, Bradley W. Pratt, Scott Edelsberg, Andrew J. Shamis, Rachel Dapeer, Edmund A. Normand, and Jacob L. Phillips are appointed as class counsel.

Within 21 days from the date of this order, the parties shall file a joint proposal for providing notice to class members.  The notice shall comply with the requirements of

---

to calculate any purported TAVT underpayments." *Id.* at 3 n.2.  The plaintiffs, on the other hand, have adduced evidence that their expert's methodology tracks the DOR's methodology for determining TAVT values.  Docs. 81 at 4 (citing Doc. 51-7 ¶ 14); 51-10 ¶ 14.  That issue, if it is joined, does not preclude certification.

[12] The Court, *sua sponte*, adds "equal to or" to the class definition.  Although GEICO does not raise the issue, if an insured received a TAVT payment equal to the amount owned under the plaintiffs' theory, the insured would not have been underpaid.

-15-

Rule 23(c)(2)(B).  In the event the parties are unable to reach a consensus for providing class members or potential class members with notice, the parties shall submit a single document outlining the areas in which they agree and those in which they do not agree. Finally, GEICO shall within seven days state whether they oppose Gardner's dismissal.

    **SO ORDERED**, this 19th day of May, 2022.

                                          S/ Marc T. Treadwell
                                          MARC T. TREADWELL, CHIEF JUDGE
                                          UNITED STATES DISTRICT COURT